**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>THE CALIFORNIA AUTOMOBILE ASSIGNED RISK PLAN, a program established under California Insurance Code section 11620 et seq., and DOES 1 through 20,<br><br>    Defendants.<br>_____/<br>THE CALIFORNIA AUTOMOBILE ASSIGNED RISK PLAN,<br><br>    Counter-Claimant,<br><br>  v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation,<br><br>    Counter-Defendant<br>_____/ | No. C 11-1419 MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

    Before the Court is plaintiff Liberty Mutual Insurance Company's ("Liberty Mutual") Motion for Leave to File Amended Complaint, filed July 2, 2012. Defendant California Automobile Assigned Risk Plan ("CAARP") has filed opposition, to which Liberty Mutual has replied. Having read and considered the papers filed in support of and in opposition to the

motion, the Court rules as follows.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.   CAIP Agreement**

On March 24, 2011, Liberty Mutual filed its complaint, alleging against CAARP a single cause of action for breach of contract. CAARP is a statutory program that assigns otherwise uninsurable drivers to insurers and regulates the premiums the insurers may charge. See Cal. Ins. Code §§ 11620 et seq. Liberty Mutual alleges in its complaint that CAARP breached the parties' contract, dated December 17, 1998, by which CAARP hired Liberty Mutual as a "servicing carrier" ("the CAIP Agreement").[2]

Pursuant to the CAIP Agreement, CAARP had an obligation to indemnify Liberty Mutual for "claims, demands, damages, costs, including reasonable attorney's fees, and amounts paid in settlement attributable to contentions seeking extra-contractual relief," i.e., bad faith actions. (See Carroll Decl. in Supp. of Mot. Ex. 2 § 8.1 (CAIP Agreement).) The CAIP Agreement contains only one exception to this indemnification requirement; specifically, CAARP is not required to indemnify Liberty Mutual if "[CAARP] can show by a preponderance of the evidence that liability was due to [Liberty Mutual's] gross negligence or willful misconduct." See id. § 8.2.

**B.   Underlying Action**[3]

In July 2003, Liberty Mutual issued a trucker's policy ("the Policy") to Joe Ten Berge ("Ten Berge"). (See Compl. ¶ 16.) On December 24, 2003, Tracee and Kurtis Harlan ("the Harlans") were involved in an automobile accident with Raymond Fulwider ("Fulwider"), who

---

[1] By order filed August 7, 2012, the Court deemed the matter appropriate for decision on the parties' respective filings and vacated the hearing scheduled for August 10, 2012.

[2] "CAIP" is an acronym for the Commercial Automobile Insurance Procedure, a series of regulations applicable to commercial truckers, promulgated by the California Insurance Commissioner. See Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917, 924-25 (2004) (describing CAARP and CAIP).

[3] The facts set forth in this section and the following section are taken from the complaint filed in the instant action.

2

1  was hauling a load brokered by Ten Berge in a trailer that Fulwider had purchased from Ten
2  Berge. (See id. ¶ 17.) Tracee Harlan was rendered an incomplete quadriplegic. (See id.)
3  The Harlans filed suit against Ten Berge in the Superior Court of Orange County ("the
4  Underlying Action"), alleging multiple causes of action for negligence. (See id. ¶ 18.)
5         Liberty Mutual's Claims Department investigated the Underlying Action, and, in May
6  2006, concluded coverage was not provided under the Policy and withdrew the defense
7  Liberty Mutual had been providing. (See id. ¶ 19.) In August 2006, the Harlans made a
8  $750,000 policy limits settlement demand to Ten Berge, which Ten Berge forwarded to
9  Liberty Mutual. (See id. ¶ 20.) Liberty Mutual did not accept the settlement, based on its
10 determination that the claim did not involve a covered vehicle. (See id.) The Harlans and
11 Ten Berge then entered into a settlement agreement whereby Ten Berge stipulated to an
12 $18 million judgment and Ten Berge assigned to the Harlans his rights against Liberty
13 Mutual under the Policy, with the exception of his right to recover the costs of defense
14 incurred in the Underlying Action, emotional distress, and punitive damages. (See id.¶ 21.)

### C.  Harlan and Ten Berge Actions

On April 1, 2008, the Harlans filed a complaint against Liberty Mutual in the Superior Court of Orange County ("the Harlan action"), alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation, and seeking general damages in the amount of $18 million, as well as attorneys' fees and costs. (See id. ¶ 22.) On May 9, 2008, Ten Berge filed a complaint against Liberty Mutual in the Superior Court of Orange County ("the Ten Berge Action"), alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, fraud, intentional and negligent infliction of emotional distress, and seeking general damages in the amount of $4 million, punitive damages in the amount of $16 million, and attorneys' fees and costs, both incurred and accruing. (See id. ¶ 23.)

Liberty Mutual settled both actions, and requested CAARP reimburse it for the costs, damages, fees and expenses incurred therein. (See id. ¶¶ 26-27.) CAARP denied Liberty

Mutual's indemnity request and the instant action followed.

**D.  Instant Action**

On July 14, 2011, the Court entered a Pretrial Preparation Order setting a trial date of October 15, 2012, and establishing November 4, 2011 as the deadline to amend the pleadings. (See Pretrial Preparation Order at 1.)  On February 21, 2012 and again on July 5, 2012, the Court, pursuant to stipulation of the parties, modified the Pretrial Preparation Order.  Pursuant to said stipulations, the trial date was continued to February 4, 2013 and various discovery deadlines were extended, but the deadline to amend the pleadings remained unchanged. (See Order Modifying the Case Schedule, filed February 21, 2012; Order Modifying the Case Schedule, filed July 5, 2012.)

On July 2, 2012, the same date as that on which the latter of the above-referenced stipulations was filed, Liberty Mutual filed the instant motion, by which Liberty Mutual seeks to file a First Amended Complaint alleging against CAARP an additional claim for breach of contract.  Specifically, Liberty Mutual seeks to add a claim for breach of Section 8.3 of the CAIP Agreement, which provides that "[Liberty Mutual] will use its best efforts to report to [CAARP] any serious matter that may give rise to a request for indemnification," and that "[CAARP] shall establish reasonable standards for determining what constitutes a serious matter that should be reported," and "may, in its sole discretion, take reasonable steps to monitor these [serious] matters." (See CAIP Agreement § 8.3.)

In support of the instant motion, Liberty Mutual asserts it did not learn of the second breach of contract claim until certain facts were disclosed during the deposition of Thomas J. Neagle ("Neagle"), CAARP's Rule 30(b)(6) designee.  In particular, Liberty Mutual asserts that Neagle testified CAARP did not, to his knowledge, establish standards for what constitutes a "serious matter," thereby breaching the CAIP Agreement.  Liberty Mutual further asserts that CAARP's breach is material, because, if CAARP had established standards for notification of serious matters, Liberty Mutual would have notified CAARP of the Underlying Action, CAARP would have monitored the Underlying Action and advised Liberty Mutual to accept the policy limits settlement, and Liberty Mutual would have followed

4

CAARP's instructions, thereby avoiding the damages Liberty Mutual ultimately incurred.

**LEGAL STANDARD**

A party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for modification of such order, under Rule 16 of the Federal Rules of Civil Procedure, and then, if "good cause" is shown, must demonstrate the proposed amendment is proper under Rule 15. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992) (noting "[o]nce the district court had filed a pretrial scheduling order pursuant to [Rule] 16 which established a timetable for amending pleadings[,] that rule's standards controlled"); see also Fed. R. Civ. P. 16(b)(4) (providing pretrial "schedule may be modified only for good cause and with the judge's consent"). Consequently, in order to amend its complaint, Liberty Mutual must, in the first instance, show good cause.

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. A "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. (quoting advisory committee's notes (1983 amendment)). "Good cause may be found to exist where the moving party shows that it diligently assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters that could not have reasonably been foreseen at the time of the issuance of the scheduling order, and that it was diligent in seeking an amendment once it became apparent that the party could not comply with the scheduling order." Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 687 (E.D. Cal. 2009). If the moving party "was not diligent, the inquiry should end." Johnson, 975 F.2d at 609 (distinguishing "Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party"; noting for purposes of Rule 16, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification"). To hold otherwise "would undermine the court's

1 ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." Id. at 610.

As noted, if the moving party is able to satisfy Rule 16's good cause standard, such party next must demonstrate the proposed amendment is proper under Rule 15. See Johnson, 975 F.2d at 608. Under Rule 15, leave to amend should be "freely give[n] . . . when justice so requires." See Fed. R. Civ. P. 15(a); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987) (noting leave to amend under Rule 15 "lies "within the sound discretion of the trial court") (internal quotation and citation omitted). In determining whether to grant leave to amend under Rule 15, the court considers whether the amendment is sought in bad faith, whether it would cause undue delay, whether amendment would prejudice the opposing party, and whether the proposed amendment would be futile. See id.

## DISCUSSION

**A. "Good Cause" Based on Assertedly Recently Discovered Facts**

**1. Diligence**

Liberty Mutual argues it has made the requisite showing of good cause based on recently discovered facts. (See Reply at 4:5-9:27.)[4] Specifically, Liberty Mutual asserts it "confirmed" for the first time at Neagle's May 18 and May 21, 2012 deposition that CAARP did not establish standards for notification of "serious matters" under Section 8.3 of the CAIP Agreement. (See Mot. at 1:26-27.) In response, CAARP argues Liberty Mutual had the CAIP Agreement in hand and knew from the start of the lawsuit whether it had received standards from CAARP. Consequently, CAARP argues, Liberty Mutual long ago knew or should have known all the facts it needed to determine whether a breach of Section 8.3 had

---

[4] At the outset, CAARP argues the instant motion should be denied because Liberty Mutual failed to move for modification of the Pretrial Preparation Order. The Court, however, will treat the instant motion to file an amended complaint as a de facto motion to amend the scheduling order. See Her v. Career Sys. Dev. Corp., No. 2:07-cv-2200, 2008 WL 4584768 at *1 (E.D. Cal. Oct. 7, 2008) (holding "[a]lthough [p]laintiffs did not specifically request that the court modify its scheduling order and merely moved to amend their Complaint, the motion is treated as a de facto motion to amend . . . the Scheduling Order").

6

taken place.

CAARP's point is well-taken. Although Neagle's deposition may have "confirmed the facts establishing CAARP's additional breach of contract" (see Mot. at 1:26-27), Liberty Mutual has failed to explain how it could have been unaware of CAARP's asserted failure to promulgate standards for notification of "serious matters" when it had never received such standards from CAARP. Consequently, Liberty Mutual has failed to show diligence based on the emergence of newly discovery facts. See Acri v. International Association of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) (noting, even under Rule 15's standard, "late amendments to assert new theories are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action"); see also Johnson, 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril") (internal quotation and citation omitted).

Further, to the extent Liberty Mutual believed it needed "confirmation" (see Mot. at 6:12-14) of CAARP's asserted failure to comply with Section 8.3, Liberty Mutual would have been aware of the need for discovery on that issue from the start of the litigation. Although Liberty Mutual contends its delay in deposing Neagle was due to "the parties agree[ment] to complete document discovery prior to taking depositions" (see Reply at 7:22-24) and that it sought to depose Neagle as early as March, 20, 2012 (see id. at 8:1-2), it does not explain why such request was made months after the November 4, 2011 deadline to amend the pleadings had passed, let alone why it could not have obtained "confirmation" by other means of discovery. See, e.g., Fed. R. Civ. P. 33, 34, 36. Consequently, Liberty Mutual has not demonstrated that it diligently sought discovery relevant to any claim under Section 8.3 of the CAIP Agreement prior to the deadline to amend the pleadings. See, e.g. Wells Fargo Bank v. Benjamin Cabal 2007 Ins. Trust, No. CV 09-01840, 2010 WL 3632787 at *9-10 (C.D. Cal. Sept. 13, 2012) (denying leave to amend where moving party failed to explain "[w]hat facts necessary to its breach of direct contract claim [it] learn[ed] during the deposition of [non-moving party's] person most knowledgeable that it could not have

discovered previously with reasonable diligence"); iRise v. Axure Software Solutions, Inc., No. CV 08-03601 SJO, 2009 WL 3615973 at *3 (C.D. Cal. July 30, 2009) (finding moving party's argument asserting "recently discovered" facts insufficient to show good cause for amendment to add new claims where party "was not diligent in seeking discovery on [those] issues").

Accordingly, the Court finds Liberty Mutual has failed to make the requisite showing of diligence and thus has failed to make the requisite showing of good cause.

### 2. Prejudice to CAARP

"[A]lthough not required under Rule 16(b)," prejudice to the opposing party "supplies an additional reason for denying [a] motion [to amend]." See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1295 (9th Cir. 2000). Here, as CAARP points out, the May 25, 2012 deadline to complete fact discovery has long since passed. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." See id. Nonetheless, Liberty Mutual argues, CAARP would not be prejudiced because, under an order entered by the Magistrate Judge assigned to discovery matters, some amount of discovery, including a deposition of Liberty Mutual's Rule 30(b)(6) representative, is ongoing. (See Order Regarding Discovery Disputes, filed June 14, 2012.) Liberty Mutual further argues any additional discovery necessitated by the proposed amendment would be minimal because the operative facts regarding CAARP's alleged breach are within CAARP's own control.

Contrary to Liberty Mutual's contention, the proposed amendment would, in all probability, require substantial additional discovery. As CAARP correctly points out, CAARP would need to take discovery to defend against Liberty Mutual's claim that Liberty Mutual would have acted in accordance with whatever standards would have been promulgated.[5]

---

[5] CAARP points to the fact that Liberty Mutual's claim requires at least five inferences to create a causal link: (1) CAARP would have established "reasonable standards" for noticing of "serious matters" before the conclusion of the Underlying Action; (2) Liberty Mutual would have notified CAARP of the Underlying Action prior to withdrawing its defense and declining to accept the Harlans' August 2006 policy limits settlement; (3) CAARP would have monitored the claim; (4) CAARP would have instructed Liberty Mutual

8

Such discovery in all likelihood would require an extension of the fact discovery deadline and, as a result, an extension of other deadlines as well. Given such circumstances, the Court finds CAARP would be prejudiced if the proposed amendment were allowed.

In any event, irrespective of whether CAARP would suffer prejudice, Liberty Mutual's failure to show good cause under Rule 16, as discussed above, is fatal to Liberty Mutual's motion. See Johnson, 975 F.2d at 609 (holding "[i]f [the moving] party was not diligent, the inquiry should end").[6]

## CONCLUSION

For the reasons stated above, Liberty Mutual's motion for leave to file an amended complaint is hereby DENIED.

**IT IS SO ORDERED**.

Dated: August 9, 2012

MAXINE M. CHESNEY
United States District Judge

---

not to withdraw its defense and to accept the Harlans' settlement offer; (5) Liberty Mutual would have followed CAARP's instructions.

[6] In light of the above findings, the Court does not address herein CAARP's additional argument that the proposed amendment would be futile.